```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA
```

GREENTEX GREENHOUSES, BV,         )
                                  )
            Plaintiff,            )        4:04CV3390
                                  )
      v.                          )
                                  )
PONY EXPRESS GREENHOUSE,          )        MEMORANDUM AND ORDER
                                  )
            Defendant.            )
                                  )

Pursuant to the parties' consent, this case is pending before me for final disposition.[1] The complaint filed by the plaintiff, Greentex Greenhouses, B.V. ("Greentex"), alleges that Plains Produce, L.L.C. ("Plains Produce") was an agent of the defendant, Pony Express Greenhouse, L.L.C., ("Pony Express"). Greentex alleges that on February 25, 2002, Plains Produce, acting within its authority as Pony Express' agent, entered into a contract for the delivery and construction of a greenhouse in Gothenburg, Nebraska, (filing 23 (Amended Complaint), ¶ 6 & Ex. A), and later modified that contract by requesting additional items related to the greenhouse construction. Filing 23 (Amended Complaint), ¶ 9.

Greentex claims it performed the original contract and also constructed the additional items requested by Pony Express, but Pony Express has paid only the original contract price and has failed and refused to pay for the additional materials delivered and the additional construction completed on the greenhouse.

---

[1] See filing 61, "Consent to Exercise of Jurisdiction by a United States Magistrate Judge and Order of Reference," and 28 U.S.C. § 636(c).

Filing 23 (Amended Complaint), ¶¶ 8-10.  Greentex alleges that it sent a bill to Pony Express on December 31, 2002 to collect amounts owed for the additional construction performed, and this bill has not been paid.  Therefore, Greentex requests $378,818.40 in damages.  Filing 23 (Amended Complaint), ¶¶ 11-12 & Ex. B.

Pending before me is the motion for summary judgment filed by Pony Express.  Filing 43.  The defendant's brief argues that under the undisputed facts of this case:

1. Pony Express did not request additional items from Greentex during performance of the construction contract; and

2. No one acting as an authorized agent for Pony Express, including Plains Produce, requested the additional construction.

See filing 44 (defendant's brief) at p. 2.  Accordingly, Pony Express claims no contract existed between Pony Express and Greentex regarding the additional construction work performed on the greenhouse, and the defendant is entitled to judgment as a matter of law.  For the reasons discussed herein, I shall deny the defendant's motion for summary judgment.

STANDARD OF REVIEW

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  In response to the moving party's evidence, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[T]here is no

2

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

> Once the moving party has met its burden of showing "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003) (quoting Stone Motor Co. v. Gen. Motors, Corp., 293 F.3d 456, 465 (8th Cir. 2002)(internal citations omitted)).

STATEMENT OF FACTS

The evidence submitted by the defendant on this motion consists of the affidavit of Larry Gill ("Gill"), with attachments, the affidavit of David Grams ("Grams"), and the pleadings herein, specifically the Exhibit A contract attached to the plaintiff's amended complaint.  See filings 23, 45, and 63.  The defendant has responded with the affidavits of Ludo van Boxem, the deposition of Gill, with attachments, and various other documents.  See filing 58.  The following summarizes the evidence relevant to the issues raised by the defendant's motion for summary judgment.

In the latter part of February 2002, Randy Cruise ("Cruise") invited Larry Gill ("Gill") and several others to attend a business presentation held at Plains Produce in Minden,

3

Nebraska.[2]  The presentation focused on identifying persons willing to invest in a startup business for raising hydroponic tomatoes in a greenhouse near Gothenburg, Nebraska.  Filing 58, (Gill deposition) at 18, 22.  Gill attended the presentation and decided to invest in the proposed hydroponic tomato business.  Filing 58, (Gill deposition) at 21, 24-25.

Gill told Cruise to build the greenhouse.  Filing 58, (Gill deposition) at 24, 37, 41.  "We told Randy that we wanted to build a greenhouse.  And it was, I guess it was basically his call who he wanted to buy it from."  Filing 58, (Gill deposition) at 40.  Gill advised Cruise to stay within the three to five million dollar range for construction costs, but other than that, no limits were placed on Cruise as to the building plans for the greenhouse.  Filing 58, (Gill deposition) at 40-41.  The agreement with Cruise, as Gill understood it, was that Cruise "would provide a -- basically a turnkey greenhouse operation."  If construction of a boiler house, for example, was needed to reach that goal, Cruise did not need additional permission from Gill before proceeding to secure that construction.  Filing 58, (Gill deposition) at 54.

The greenhouse was to be constructed on land owned by 96 Ranches, Inc. ("96 Ranches").  Filing 58, (Gill deposition) at 25.  Gill is the president of 96 Ranches.  Cruise began collecting bids and ultimately concluded that Greentex submitted the best bid for constructing the greenhouse.  Cruise told Gill he had received bids from other companies but Greentex seemed to

---

[2] Plains Produce L.L.C., originally a named defendant, has filed for bankruptcy relief.  Nothing was found in the record identifying its members or the relationship of Randy Cruise and David Grams with Plains Produce.

4

be the best choice. Filing 58, (Gill deposition) at 27. Cruise prepared the plans for the greenhouse construction and Gill, who knew very little about greenhouses, spoke with and relied upon Cruise throughout the construction process. Filing 58, (Gill deposition) at 28-30.

The underlying written contract with Greentex for building the greenhouse was formed on or about February 25, 2000. As of that date, defendant Pony Express Greenhouse L.L.C. was not a legal entity. It was formed on March 15, 2002, with Michael Bacon and 96 Ranches as members, and Gill serving as its sole manager. Filing 45, att. 1 (Gill affidavit), ¶ 5 & ex. B; filing 58, (Gill deposition) at 25. Pony Express later adopted an operating agreement which was effective as of April 3, 2002. Filing 58, (Gill deposition) ex. 2.

The February 25, 2002 contract with Greentex for construction of the greenhouse was signed by Plains Produce, David Grams, and Cruise. See filing 23 (amended complaint), Ex. A; filing 45, att. 1 (Gill affidavit), ¶ 6. Pony Express has never had any membership or ownership interest in Plains Produce. Filing 45, att. 1 (Gill affidavit), ¶ 9. Gill never saw the contract with Greentex, and lacked the knowledge to read the contract and confirm that it required construction of all items necessary for a "turnkey greenhouse." Gill was not aware that Cruise requested construction of items not identified in the Greentex contract while the construction work was ongoing (filing 58, (Gill deposition) at 53), but he does know that Greentex constructed and Pony Express received at least some of these additional items, for example, the boilers used to heat the greenhouse. Filing 58, (Gill deposition) at 57-58.

The initial payment made to Greentex to begin the building project, approximately two million dollars, was borrowed by Cruise from Gothenburg State Bank. Filing 45, att. 1 (Gill affidavit), ¶ 11; filing 58, (Gill deposition) at 24. Gill accompanied Cruise to the bank and personally guaranteed repayment of Cruise's loan. Filing 58, (Gill deposition) at 31. On May 1, 2002, after Pony Express was formed, it reimbursed Cruise for the startup loan by issuing a check to Cruise in the amount of $1,957,654.12. Filing 45, att. 1 (Gill affidavit), ex. D; filing 58, (Gill deposition) at 42-43.

Construction of the greenhouse began, and Cruise served as the contractor. Filing 58, (Gill deposition) at 38. On May 15, 2002 Pony Express entered into an agreement with CT Farms, Ltd. ("CT Farms") which stated CT Farms would serve as the contractor for constructing the greenhouse. Filing 58, (Gill deposition) at 17. Randy Cruise was the president of CT Farms, (filing 45, att. 1 (Gill affidavit), ex. C), and signed the contract on behalf of CT Farms. Filing 58, (Gill deposition) at 17. Thereafter, in accordance with the Pony Express/CT Farms contract, Pony Express paid Cruise a salary during construction of the greenhouse, (filing 45, att. 1 (Gill affidavit), ¶ 11; filing 58, (Gill deposition) at 41-42), and CT Farms acquired all necessary building permits for that construction. Filing 58, (Gill deposition) at 50.

David Grams was another signatory on the Greentex contract. Gill claims Grams had no known role in the project, (filing 58, (Gill deposition) at 38), and Grams claims his activities were conducted on behalf of only CT Farms and not Pony Express. Filing 63 (Grams affidavit). However, based on the address bock of letters sent to Grams, and the signature block of letters sent

6

by Grams concerning construction permits, Grams identified himself as a representative of Pony Express.  Filing 58, exs. 4 & 5.  Grams also sent an email to the International Sales Director for Greentex, Ludo van Boxem, and copied the email to Gill, regarding problems with the project, (filing 58, ex. 6); and signed slips for withdrawal of funds, on Gill's behalf, from Pony Express' account.  Filing 58, ex. 7.

During the construction process, if money was owed to Greentex, Cruise contacted Gill to wire funds directly to Greentex.  Filing 58, (Gill deposition) at 49, 51-52, 55-56 ex. 10.  Cruise was also authorized to contact the bank directly and request that Pony Express funds be wired to Greentex.  Filing 58, (Gill deposition) at 52.  Finally, CT Farms was authorized to sign checks on behalf of Pony Express for payment to Greentex on this building project.  Filing 58, (Gill deposition) at 56.  Gill claims these payments were made with the understanding that Pony Express was paying CT Farms' obligation on its subcontract with Greentex, (filing 45, att. 1 (Gill affidavit), ¶ 11), but there is nothing in the record to indicate Greentex knew or should have known the payments were made solely on CT Farms' behalf.

Cruise introduced Gill to Ludo van Boxem in April or May of 2002.  Filing 58, (Gill deposition) at 28-29.  Ludo van Boxem visited the greenhouse site several times during construction, and met with both Cruise and Gill during those visits.  Although Gill exchanged pleasantries with Ludo van Boxem, Cruise handled any communications related to the construction itself because Gill knew nothing about greenhouses.  Filing 58, (Gill deposition) at 33-34.

A breakfast meeting was held in mid to late May 2002. Ludo van Boxem and Jan Verbakel were present on behalf of Greentex. Bank representatives, Randy Cruise, Ron Cruise, David Grams, Mike Bacon, and Gill also attended the meeting. Filing 58, (Gill deposition) at 34. The grading of the site was complete, and Greentex requested an accelerated payment schedule to facilitate the shipment of materials for the construction. At Randy Cruise's recommendation, Gill agreed to an accelerated payment schedule during that meeting. Filing 58, (Gill deposition) at 34-35.

The greenhouse was substantially built by November 2002, and tomato plants were placed in the greenhouse. Filing 58, (Gill deposition) at 42. After the greenhouse went into production, CT Farms managed it. Filing 58, (Gill deposition) at 39. CT Farms hired employees to work at the greenhouse. Filing 58, (Gill deposition) at 19. Pony Express relied on CT Farms to make the greenhouse productive, (filing 58, (Gill deposition) at 60), and relied on Cruise to recognize and resolve any facility problems that arose. Filing 58, (Gill deposition) at 71-80.

The relationship between CT Farms and Pony Express ended in late 2003 because greenhouse production was falling short of the projected goals. Filing 58, (Gill deposition) at 45. Pony Express was placed in receivership at that time. Filing 58, (Gill deposition) at 45-46.

LEGAL ANALYSIS

The defendant argues that no contractual relationship exists between Greentex and Pony Express because Pony Express did not exist when the greenhouse construction contract was formed, did

not sign the contract, did not request additions to the contract, and authorized no one to act as an agent on its behalf in contracting with Greentex.  I conclude, however, that the evidence submitted on this motion raise a material issue of fact as to whether Cruise and Grams, acting either in their personal capacities or on behalf of Plains Produce or CT Farms, were actual or apparent agents for Pony Express in dealing with Greentex, and/or whether Pony Express ratified their acts as its agents.

Nebraska law defines an agency as "a fiduciary relationship where two parties mutually agree that one may act on behalf of and subject to the control of the other."  State ex rel. Medlin v. Little, 270 Neb. 414, 418, 703 N.W.2d 593, 597 (2005).  A principal is bound by, and liable for, the acts an agent was actually or apparently authorized to perform.  Dept. of Banking & Finance of State of Neb. v. Davis, 227 Neb. 172, 178, 416 N.W.2d 566, 570 (1987).  Apparent authority is the authority an agent seems to have by reason of the authority she or he actually has.  Medlin, 270 Neb. at 418-419, 703 N.W.2d at 597.

> An alleged principal clothes an agent with apparent authority when the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent authority. . . .   But in order for the principal to incur responsibility for the acts of an agent with apparent authority, the authority must be traceable to the principal's own conduct; it cannot be established only by the agent's acts, declaration, or conduct.

Medlin, 270 Neb. at 419-420 (internal citation omitted).  A party who has permitted others to treat someone as its agent is estopped to deny the agency.  Davis, 227 Neb. at 178.

9

"Whether an agency relationship exists depends on the facts underlying the relationship of the parties irrespective of the words or terminology used by the parties to characterize or describe their relationship." Medlin, 270 Neb. at 418-419, 703 N.W.2d at 597. "[A] fact finder must consider the facts and circumstances of the case, the parties' relationship, their usual course of dealing, any instructions given, the parties' conduct, and the nature of the transaction. Medlin, 270 Neb. at 419, 703 N.W.2d at 597. The question of agency, that is, the authority of one person to speak or act for and bind another, is a question of fact, and there is no presumption of its existence. Wagoun v. Chicago, B. & Q.R. R., 155 Neb. 132, 50 N.W.2d 810 (1952); Meier v. Geldis, 148 Neb. 234, 26 N.W.2d 813 (1947).

The evidence presented on defendant's motion indicates that although Pony Express did not sign the contract with Greentex and was not aware of requests for additions to that contract, Gill may have authorized Cruise to enter into such a contract on Pony Express' behalf while awaiting its actual formation as an independent entity. The evidence reflects that Gill knew Cruise was entering into a contract to build a greenhouse at Gill's request, and accompanied and assisted Cruise in obtaining the initial loan to begin that project. Gill testified that once Pony Express was in existence, it paid Cruise to act as the contractor for building the greenhouse, and Pony Express made payments directly to Greentex for that project. Gill further testified that he was present when Cruise met with Greentex officials at the greenhouse construction site, but in the presence of Greentex representatives, relinquished the task of making decisions regarding construction to Cruise, and followed Cruise's recommendations regarding a modified payment schedule. When Greentex was entitled to interim construction payments,

Cruise could either contact Gill and tell him to contact the bank and have the money wired, or Cruise could contract the bank directly and tell it to wire Pony Express funds to Greentex.

Considering these facts "through the lens of the third party," (Medlin, 270 Neb. at 420, 703 N.W.2d at 597), a factual issue exists as to whether Gill's conduct on behalf of Pony Express, especially his instruction to Cruise to build the greenhouse, and his act of relinquishing the bidding process and supervisory control over the project to Cruise while continuing to pay the bills, caused Greetex to reasonably believe that Pony Express authorized Cruise and/or Plains Produce or CT Farms to act on Pony Express' behalf.  Medlin, 270 Neb. at 419, 703 N.W.2d at 597 (county commissioner's statement to board chairman stating, "Do what you have to do," granted apparent authority to chairman to submit commissioner's previously drafted resignation letter to the county clerk); Oddo v. Speedway Scaffold Co., 233 Neb. 1, 6-7, 443 N.W.2d 596, 601 (1989)(holding that where the principal admitted that the mason tender had authority to sign documents on the principal's behalf, the agent has actual authority to bind the principal).

Similarly, Grams signed and received letters on Pony Express' behalf when securing permits for the construction from the State of Nebraska.  While Gill claims he did not know Grams was holding himself out as an agent for Pony Express, Gill was copied on Grams' email to Greentex regarding problems with the construction, and Grams signed on Gill's behalf to withdraw money from Pony Express' account.  Both circumstances raise an issue concerning whether Grams was purporting to act as Pony Express' agent, whether Gill knew or should have known that Grams was doing so, and whether Pony Express, acting through Gill,

11

"affirmatively, intentionally, or by lack of ordinary care" caused Greentex to reasonably believe Grams was acting on Pony Express' behalf.  Medlin, 270 Neb. at 419, 703 N.W.2d at 597.

Finally, Greentex has brought suit to recover for construction not described in the February 25, 2002 contract but performed at Cruise's request.  Pony Express claims Cruise was not authorized to bind Pony Express as to these additional items. A principal's affirmance of an unauthorized transaction can be inferred from its failure to repudiate it.  Bank of Valley v. Shunk, 215 Neb. 25, 27, 337 N.W.2d 118, 119 (1983)(Restatement (Second) of Agency § 94 (1958).  If the fact finder concludes Cruise was acting as Pony Express' agent, it must then decide if the requested additions to the February 25, 2002 contract exceeded that authority but were nonetheless ratified.  If an agent engages in an unauthorized act, and the principal wishes to repudiate that act, it must, as soon as it knows of the facts, return or tender a return of any benefits it received as the proceeds of the unauthorized acts or be held to have ratified them.  Stolmeier v. Beck, 232 Neb. 705, 710, 441 N.W.2d 888, 892 (1989); Western Fertilizer and Cordage Co., Inc. v. BRG, Inc., 228 Neb. 776, 424 N.W.2d 588 (1988).

Pony Express received a greenhouse, along with additional construction to that greenhouse allegedly requested after the February 25, 2003 contract was formed.  If Cruise, Grams, and Plains Produce were not authorized to enter into the contract and subsequent contract modifications on Pony Express' behalf, Pony Express was required to promptly say so and attempt to return the unauthorized items to Greentex.  Its failure to do so raises an issue of fact as to whether Pony Express ratified or acquiesced in the acts of Cruise, Grams, and Plains Produce in contracting

for the construction of the greenhouse and any later additions to that construction.

    IT THEREFORE HEREBY IS ORDERED:  The defendant's motion for summary judgment, filing 43, is denied.

    DATED this 12th day of April, 2006.

                                BY THE COURT:

                             s/ *David L. Piester*
                                David L. Piester
                                United States Magistrate Judge